UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-80008-RUIZ/MAYNARD

**DAVID YEAGER, NICOLE FISHER,
JACK YEAGER, and SIMONE YEAGER**,

Plaintiffs,

v.

**HUNTERS RUN PROPERTY OWNERS
ASSOCIATION, INC**. d/b/a HUNTERS
RUN COUNTRY CLUB,

    Defendant.

_____/

# REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS (DE 3)

**THIS CAUSE** comes before me for Report and Recommendation on Defendant's Motion to Dismiss the Plaintiffs' Complaint (DE 3). Plaintiffs David Yeager, Nicole Fisher, Jack Yeager, and Simone Yeager have filed suit against Defendant, the Hunters Run Property Owners Association, doing business as Hunters Run Country Club ("Hunters Run"), alleging violations of the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et. seq.*, and the Palm Beach County, Florida Code of Ordinances ("County Code") Sections 15-58(2) and (3). Defendant moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed herein, I respectfully recommend that Defendant's Motion to Dismiss be GRANTED.

## BACKGROUND

Plaintiffs' Complaint alleges that Hunters Run discriminated against Jack and Simone Yeager (the "grandparents"), owners of a property in the Hunters Run community, by not allowing

1

their 19-month-old granddaughter (the "child") to go in the Hunters Run clubhouse pool because she was wearing a swim diaper.

The Complaint makes the following factual allegations. On December 13, 2018, the child and her parents, David Yeager and Nicole Fisher ("parents"), were guests of the grandparents at the Hunters Run clubhouse pool. DE 1 at ¶¶10-12. The child entered the community pool while clothed in a swim diaper. *Id.* at ¶13. A Hunters Run employee approached the parents and demanded that the child be removed from the pool. *Id*. at ¶14. The employee informed the parents that the child could not use the clubhouse pool and should use the pool designated for children ("the kiddie pool"). *Id.*at ¶15. Prior to December 13, 2018, there were other instances in which an employee of Hunters Run demanded that a child wearing a swim diaper be removed from the clubhouse pool. *Id.* at ¶16.

The Complaint alleges four counts. Counts I and II allege violations of the Palm Beach County Code of Ordinances, (the "County Code"),[1] Sections 15-58(2) and (3). Counts III and IV allege violations of the federal Fair Housing Act of 1988, ("FHA"), 42 U.S.C. § 3604.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal of a complaint based on a lack of subject matter jurisdiction. "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 fn. 42 (11th Cir. 1991). "[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack asks that the court

---

[1] Palm Beach County, Fla., Code of Ordinances § 15-58 (2022).

merely look at the complaint to determine whether it alleges a sufficient basis for subject matter jurisdiction. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings[.]" *Id.* at 1233.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted. When considering such a motion, a court must accept the factual allegations pleaded in the complaint as true and must construe the complaint in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" so as to "nudge his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether the plausibility standard has been met, a court must consider the pleading as a whole and must draw on judicial experience and common sense. *Id.*; *see also Speaker v. U.S. Department of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).

A plaintiff is not required to detail all of the facts on which his claim is based; rather, Rule 8(a)(2) requires only a short and plain statement that fairly notifies the defendant of what the claim is and the grounds on which it rests. *Twombly*, 550 U.S. at 555–56; *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). The allegations must, however, be enough to raise a right to relief above the speculative level. *Id*. The Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 662. "Mere 'labels and conclusions or a

formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citation omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

## ANALYSIS

Defendant moves to dismiss on three grounds: (1) Plaintiffs claims are barred by the statute of limitations; (2) Plaintiffs lack standing to sue; and (3) Plaintiffs have failed to state a claim for disparate treatment or adverse impact. Since standing is jurisdictional, I address it first because without it the court has no authority to proceed.

### A. Standing

Courts have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Generally, "[t]he question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Bennet v. Spear*, 520 U.S. 154, 162 (1997) (*quoting Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Prudential limitations on standing are not applicable here, however, because Congress intended FHA standing to extend as far as constitutional limitations will allow. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). "Courts thus lack authority to erect prudential barriers to restrict the standing of plaintiffs to bring suit under the [Fair Housing Act] beyond the constitutional parameters erected by Article III." *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1497 (10th Cir. 1995). *See also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1330-32 (11th Cir. 2013) (recognizing congressional intent to

4

provide standing under the FHA to the full limits of Article III and applying the same analysis to the ADA).

The Supreme Court has identified three elements that must be satisfied to meet constitutional requirements for standing. First, Plaintiffs must demonstrate an "injury in fact," which is "concrete," "distinct and palpable," and "actual or imminent." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citation and internal quotation marks omitted). Second, Plaintiffs must establish "a causal connection between the injury and the conduct complained of – the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (*quoting Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 25, 41-42 (1976)). Third, Plaintiffs must show a "'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Vermont Agency of Natural Resources v. United States ex. Rel. Stevens*, 529 U.S. 765, 771 (2000) (*quoting Simon*, 426 U.S. at 45).

Plaintiffs allege that Defendant violated the familial status protections of the Fair Housing Act by not permitting their child/grandchild to use the Hunters Run community pool. Defendant contends that none of the Plaintiffs have standing because the parents do not live in the Hunters Run community, and the grandparents are not "domiciled with" the child.

The Fair Housing Act, 42 U.S.C. § 3601, *et. seq.*, makes it unlawful, in pertinent part, to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of … familial status…." 42 U.S.C. § 3604(b). "Familial status" is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with … a parent or another person having

5

legal custody of such individual or individuals….". [2] 42 U.S.C. § 4602(k); *see also City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995) (noting that in 1988, Congress extended the FHA to proscribe "'familial status' discrimination, *i.e.*, discrimination against parents or other custodial persons domiciled with children under the age of 18"). Thus, the FHA "prohibits discrimination against *families with children.*" *Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Comm. Homeowners Ass'n, Inc.*, 682 F. App'x 768, 770 (11th Cir. 2017) (citing 42 U.S.C. §§ 3604, 3602(k)) (emphasis provided). To qualify for familial status protection, "the primary caretaker must not only live in the home with the children, but the adults and children should also function as a family together." *Estvanko v. City of Perry*, 2011 WL 1750232, at *6 (M.D. Ga. May 6, 2011). Section 15-37(11) of the County Code defines familial status in substantially the same way as the Fair Housing Act.[3]

---

[2] The FHA states:

"Familial status" means one or more individuals (who have not attained the age of 18 years) being domiciled with—

    (1) a parent or another person having legal custody of such individual or individuals; or

    (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

42 U.S.C § 3602(k).

[3] Section 15-37(11) of Palm Beach County's Code of Ordinances states:

Familial status means one (1) or more individuals who have not attained the age of eighteen (18) years being domiciled with:

    a. A parent or another person having legal custody of such individual or individuals; or

    b. The designee of such parent or other person having such custody, with the written permission of such parent or other person. The protection afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of eighteen (18) years.

Defendant argues that the parents lack standing because the Complaint fails to allege that they are or have attempted to be tenants, owners, or residents of the Hunters Run community. The Complaint specifically alleges that the parents "were guests of the owners" of a property located in Hunters Run. DE 1 at ¶¶12, 1. Since they did not own or rent property in the Hunters Run community, and there is no allegation that they were attempting to do so, I agree that they are not within the class of persons protected by the Fair Housing Act. They are not persons discriminated against "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith[.]" 42 U.S.C. § 3604(b).

Defendant further contends that the grandparents lack standing because, although they are property owners within the Hunters Run community, DE 1 at ¶¶ 4, 5, their relationship with the child does not fall within the applicable statutory definition of "familial status." To be protected from discrimination based on "familial status," the FHA requires that the minor and parent or legal custodian be domiciled with one another. In this case, the Complaint alleges that the child and her parents "were guests" of the grandparents, who were owners within the community. DE 1 at ¶12. As a guest, the child was not domiciled with the grandparents, nor is there any indication in the Complaint that the grandparents were in the process of securing legal custody of the child. Therefore, the grandparents also are not members of a class protected by the familial status provisions of the FHA.

Plaintiffs argue that they have standing because the County Code's definition of "family" encompasses the relationship between grandparents and grandchildren.[4] Meeting the Code's definition of "family," however, is insufficient to make Plaintiffs members of the class of persons

---

[4] Section 15-37(7) of the Palm Beach County Code of Ordinances states: The term *family* includes the grandparents, parents, children, brothers and sisters, whether by marriage, legal adoption or blood, and their spouses and children, of either the property owner or spouse of the property owner; and the term 'family' also includes a single individual."

protected by the FHA's prohibition against familial status discrimination. The County Code defines the term "familial status" the same way the FHA does. When interpreting statutes, the place to begin is with the statutory language itself. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). If that language is plain, then the Court must enforce the language as written. *See Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009). A court is not free to ignore words or to impart on a statute a meaning not there appearing. *See Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1017 (11th Cir. 2007) ("We are not empowered to rewrite statutes."). "Family status" under the FHA and County Code is plainly defined as one or more minors being domiciled with a parent, someone having legal custody, or a designee thereof. Although Plaintiffs insist throughout the Complaint that they are members of a class protected from discrimination due to familial status, DE 1 at ¶¶18, 29, 29, and 48, this assertion is incorrect. The Complaint fails to allege any facts plausibly showing that Plaintiffs are members of a class of persons protected from familial status discrimination by the FHA.

The standing inquiry does not end there, however, because the FHA does not require a plaintiff to be a member of a protected class to have standing. Section 3613 of the FHA provides that "[a]n aggrieved person may commence a civil action in an appropriate U.S. District Court." 42 U.S.C. § 3613(a)(1)(A). Rather than define "aggrieved person" as a member of a protected class under the FHA, the statute defines "aggrieved person" as "any person who – (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." *Id*. at 3602(I). Because the FHA gives standing to "aggrieved persons," it does not require a plaintiff to be a member of a protected class to have standing. *See, e.g.*, *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103 (1979) (concluding that white members of a community had standing to sue real estate

8

brokers as "aggrieved persons" under the FHA on the ground that discriminatory sales practices deprived the community of racial diversity); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 208 (1972) (concluding that white tenants had standing to sue a landlord's discrimination against nonwhites as "aggrieved persons" because they suffered stigmatization and loss of social, business, and professional advantages of a diverse community).

To survive a motion to dismiss based on lack of standing, Plaintiffs must allege facts showing either that they are members of a class protected by the FHA, or that they are "aggrieved person[s]" in that they have suffered actual injury as an ancillary effect of present or imminent discrimination against protected class members. *Wasserman v. Three Seasons Ass'n No. 1, Inc.*, 998 F. Supp. 1445, 1446 (S.D. Fla. 1998)); *see also Yeh Ho v. Wells Fargo Bank, N.A.*, 2019 WL 2061101, *4 (S.D. Fla. May 9, 2019); *Hernandez v. Monarch Real Estate Corp.*, 2009 WL 10707040, at *5 (D.N.M. Aug. 27, 2009). As one practice manual on civil rights law explains:

> Since the FHA gives standing to 'aggrieved persons,' it does not require membership in a protected class in order for a plaintiff to have standing. However, not just any nonprotected class member who protests what he or she perceives to be a discriminatory housing policy is an 'aggrieved person' with the standing to sue under the FHA. An 'aggrieved person' is a nonclass member who suffers actual injury as an ancillary effect of present or imminent discrimination against a protected class member and challenges the discriminatory policy on behalf of that class member.

14A C.J.S. Civil Rights § 439, *Persons Entitled to Sue for Violation of Fair Housing Act* (citing cases). "The lesson to be drawn from these authorities is that standing to sue under the Fair Housing Act does not arise solely from a showing of concrete injury to the plaintiff; the plaintiff also must establish a sufficient nexus between the injury and some form of prohibited discrimination against a protected class member." *Hernandez*, 2009 WL 10707040, *5 (*citing Wasserman*, 998 F. Supp. at 1446.

Plaintiffs have not met either of these requirements. They have not alleged facts showing they are members of a class protected by the FHA. And, although the grandparents arguably have alleged a specific injury in that they are unable to enjoy their community's pool with their grandchild due to Defendant's rule prohibiting children in swim diapers, they have failed to allege facts showing a nexus between their injury and prohibited discrimination against protected class members. The Complaint alleges that there were "other instances in which [Defendant] has demanded that a child wearing a swim diaper be removed from the Clubhouse pool" and Defendant has "on multiple occasions demanded that children wearing swim diapers be removed from the Clubhouse Pool[.]" DE 1 at ¶¶ 16, 22. But these allegations do not provide facts showing these instances involved members of a protected class and do not include sufficient information to put Defendant on notice of the relevant details. Moreover, in responding to the Motion to Dismiss, Plaintiffs completely fail to articulate a nexus between Plaintiffs' alleged injury and prohibited discrimination against protected class members. I therefore conclude that the Complaint as pled is insufficient to establish standing for any of the named Plaintiffs. I recommend dismissal on this basis.

### B. Statute of Limitations

A complaint may be dismissed on the basis of a statute of limitations at the motion to dismiss phase "only if it is apparent from the face of the complaint that the claim is time-barred." *Beach Comm. Bank v. CBG Real Estate LLC*, 674 F. App'x 932, 934 (11th Cir. 2017) (internal quotations omitted). Generally, the statute of limitations is an affirmative defense raised in an answer rather than in a motion to dismiss. *See Am. Airlines, Inc. v. Vidal*, 2009 WL 10669069, at *1 (S.D. Fla. Sept. 22, 2009). Plaintiffs are not required to negate every affirmative defense in their complaint. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004);

*Spadaro v. City of Miramar*, 855 F.Supp.2d 1317, 1328 (S.D. Fla. 2012). When reviewing a motion to dismiss on statute of limitations grounds, the district court "must determine whether the date alleged in the statement of a claim indicates that the action was not brought within the applicable statute of limitations." *Harmony Homes, Inc. v. U.S. on Behalf of Small Bus. Admin.*, 890 F. Supp. 1032, 1035 (M.D. Fla. 1995). On a motion to dismiss, a court may dismiss a complaint as time barred "only if it appears beyond a doubt that Plaintiffs can prove no set of facts" showing the claims are timely. *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1080 (S.D. Fla. 2019) (quoting *Keira v. U.S. Postal Inspection Serv.*, 157 F. App'x. 135, 136 (11th Cir. 2005) (internal quotations omitted)).

The federal Fair Housing Act provides that "[a]n aggrieved person may commence a civil action ... not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice . . . ." 42 U.S.C. § 3613(a)(1)(A). "The computation of such 2-year period shall not include any time during which an administrative proceeding . . . was pending with respect to a complaint or charge . . . based upon such discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(B). Likewise, under the County Code, "[a] civil action shall be commenced no later than 2 years after the occurrence or the termination of an allegedly discriminatory practice . . . ." County Code § 15-56(a). Further, "[t]he computation of such two-year period shall not include any time during which the investigation was pending with respect to the complaint under this article based upon such discriminatory practice." *Id*. at §15-56(c).

Defendant argues that Plaintiffs' lawsuit, which was filed on December 1, 2021,[5] is time-barred. DE 3 at 7. According to the Complaint, Plaintiffs were discriminated against on December

---

[5] In the Motion, Defendant mistakenly contends that Plaintiffs did not file a lawsuit until December 9, 2021. DE 3 at 5. The record plainly shows that contention is incorrect. The Notice of Removal filed at Docket Entry 1 in this case

13, 2018, DE 1 ¶¶ 10-15, and the parties agree that Plaintiffs filed an administrative charge of housing discrimination with the United States Department of Housing and Urban Development ("HUD") on March 1, 2019. [6] DE 9 at 3; DE 14 at 1. The parties disagree, however, about when that administrative charge was closed or no longer "pending" for purposes of determining excludable time under the applicable tolling provisions.

Defendant takes the position that HUD referred Plaintiffs' administrative charge to the Palm Beach County Office of Equal Opportunity, which "closed" the charge on January 27, 2020. DE 3 at 5 (stating that "the charge was closed on January 27, 2020"); DE 14 at 1 (stating without evidentiary support that "HUD thereafter referred it to the Palm Beach County agency on May 16, 2019"). As support for the position that the charge was "closed" on January 27, 2020, Defendant attaches a Notice of Failure of Conciliation ("Notice") issued by the Palm Beach County Office of Equal Opportunity Director on January 27, 2020. DE 3-2. The Notice advises that the agency's "efforts to conciliate the complaint of housing discrimination . . . have been unsuccessful." *Id*. at 1. Notably, the Notice does not state anywhere that the charge is "closed." *Id*. Using the date of the Notice as the date on which Plaintiffs' administrative charge was no longer "pending,"

---

includes the Complaint. According to the face of the Complaint, it was e-filed in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida on December 1, 2021 at 3:43 PM. DE 1 at 12. Indeed, Defendant's Notice of Removal asserts on page 1 paragraph 2 that "[t]he original Summons and Complaint was filed in state court on December 1, 2021 and served on or about December 9, 2021." DE 1 at 1.

[6] In Defendant's initial Motion, Defendant incorrectly claimed that "Plaintiff filed a charge of housing discrimination with HUD and the local administrative agency, Palm Beach County Office of Equal Opportunity, on May 17, 2019 concerning the alleged violation on December 13, 2018." DE 3 at 5. In support, Defendant attached a letter dated May 17, 2019 that the Palm Beach County Office of Equal Opportunity sent to Defendant requesting a sworn written answer to Plaintiffs' administrative complaint and accompanying documentation within ten days. DE 3-1. Plaintiffs respond by clarifying that they did not file their administrative complaint on May 17, 2019; rather, they filed their administrative complaint with the United States Department of Housing and Urban Development ("HUD") on March 1, 2019. DE 9 at 3 (referencing HUD Case No. 04-19-5966-8). In reply, Defendant concedes the truth of Plaintiffs' assertion that they filed their complaint with HUD on March 1, 2019. DE 14 at 1.

Defendant argues that Plaintiffs had 332 days of excludable time and the deadline for filing a lawsuit was November 10, 2021.[7]

In opposition, Plaintiffs point out that the Notice allowed Plaintiffs "to request an administrative proceeding before the Palm Beach County Fair Housing Board ("Board") pursuant to Section 15-55 within thirty (30) days after the issuance of this Notice." DE 3-2 at 1. Thus, Plaintiffs add an additional 30 days to the date of the Notice to account for the time they would have had to request an administrative hearing. By Plaintiffs' calculation then, the administrative proceeding remained "pending" until February 26, 2020 – providing them 362 days of excludable time. DE 9 at 3-4. With 362 days excluded, the deadline for filing a lawsuit was December 10, 2021. Since the lawsuit was filed on December 1, 2021, under Plaintiffs' calculations, it was timely filed.

In their Reply, Defendants counter that the Notice also provided that:

> Alternatively, pursuant to Section 15-55, a complainant, a respondent, or an aggrieved person on whose behalf a fair housing complaint was filed may elect to have the claims asserted in the complaint decided in a civil action as provided by Section 15-56 in lieu of a hearing before the Board. <u>However, the election to proceed in a court of law must be made by the electing individual not later than the twentieth (20th) day after the issuance of this Notice.</u> Therefore if you elect to have the allegations in the complaint and the Determination of Reasonable Cause decided in a court of competent jurisdiction, you must inform the Director of the Palm Beach County Office of Equal Opportunity in writing not later than the twentieth (20th) day after issuance of this Notice."

DE 3-2 at 1-2 (emphasis added). As the respondent, Defendant elected by letter dated February 5, 2020 to have the claims decided in a civil action in accordance with the Notice. In support,

---

[7] Because Defendant's initial Motion incorrectly used May 17, 2019 as the date when Plaintiff filed an administrative complaint, *see* n. 5, *supra*, the Motion inaccurately stated that 255 days are excludable and the deadline for filing a lawsuit was August 25, 2021. This Report recalculates Defendant's argued-for deadline using March 1, 2019, the date both parties now agree the administrative action was filed.

Defendant attaches correspondence reflecting the date of Defendant's election. DE 14-1. Defendant argues, without support, that its election to proceed with a civil action on February 5, 2020 foreclosed any further administrative action by Plaintiffs. "Therefore, at best the tolling period ended on February 5, 2020, and the statute of limitations was tolled for 341 days (between March 1, 2019 and February 5, 2020) making the deadline to file this lawsuit November 19, 2021 based on the December 13, 2018 alleged date of incident." DE 14 at 2 (*quoting* County Code Section 15-55(a) and (b)). Under this approach, Plaintiffs' lawsuit – filed on December 1, 2021 – remains time-barred.

I am not convinced by Defendant's arguments and calculations that Plaintiffs' complaint is indeed time barred. First, Defendants offer no legal support for their contention that the date a local agency issues a Notice of Failure of Conciliation is the date a claimant's federal HUD complaint is closed and no longer pending for purposes of calculating excludable time under the FHA. Second, neither party has made any effort to explain the interplay between HUD and the local agency for purposes of responding to a claimant's HUD complaint, nor have the parties offered any legal support for the argument that closure of the local agency's case also closes the federal administrative proceeding. In addition, neither party offers legal support for their respective positions about how a complainant's right to request an administrative hearing before the local agency within thirty days or a respondent's election to proceed with a civil action within twenty days affects calculation of the excludable time period. This is not the situation present in *Allen v. Housing Authority of City of Auburn, Ala.*, 638 F. App'x. 825 (11th Cir. 2015), where a claimant received a letter from HUD indicating that her FHA claim was dismissed, sought review which by law was required to occur within sixty days, and waited three years before following up with HUD to find out the outcome. In that case, the Court found that the plaintiff's claim was

clearly barred because "by failing to follow up on her FHA claim for over three years, [plaintiff] abandoned these claims," and her complaint was properly dismissed for failure to comply with the FHA's two-year statute of limitations. Here, if Plaintiffs missed the filing deadline, they did so by less than a month and amidst confusion about when Plaintiffs' administrative action was formally "closed."

That said, the Complaint is devoid of any allegations regarding dates on which Plaintiffs filed federal or local administrative claims or dates on which HUD or a local agency formally closed those cases. Thus, it appears from the face of the Complaint that the statute of limitations bars Plaintiffs claims. "When the time-bar is apparent from the face of the complaint, the plaintiff bears the burden of pleading allegations sufficient to toll the statute of limitations." *Padilla v. Porsche Cars. N. Am., Inc.*, 391 F. Supp.3d 1108, 1112 (S.D. Fla. 2019); *see Patel v. Diplomat*, 605 F. App'x 965, 966 (11th Cir. 2015). Plaintiffs have failed to do so here. The Complaint claims Plaintiffs were discriminated against on December 13, 2018. Plaintiffs' lawsuit was not filed until December 1, 2021. The Complaint includes no information indicating that the statute of limitations was tolled. The Complaint also includes no facts supporting Plaintiffs' conclusory contention – stated in passing without argument or legal support – that the alleged discrimination is "continuing and remains ongoing." DE 9 at 3-4. Where plaintiffs allege a pattern of discrimination and various acts are related to this pattern, the statute of limitations is applied differently than it would be applied where plaintiff has alleged discrete acts of discrimination. *See HOPE, Inc. v. Key Colony No. 4 Condominium*, 510 F. Supp.2d 1003, 1010 (S.D. Fla. Jan .10, 2007) (citing *Havens*, 455 U.S. at 380-81 (stating that "pursuant … to the Fair Housing Act, [where a plaintiff] challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [two years]

of the last asserted occurrence of that practice.") (internal citations omitted)); *Center for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) ("The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period.") Here, Plaintiffs have not alleged facts plausibly showing a continuing violation consisting of additional violations of law occurring within the statutory period. Plaintiffs allege that "*prior to the December 13, 2018 incident . . .* there have been other instances in which an employee of Hunters Run has demanded that a child wearing a swim diaper be removed from the Clubhouse Pool." DE 1 at 16. That allegation, along with their generalized allegation that "on multiple occasions" other "children wearing swim diapers have been removed from the pool," is insufficient to establish that their lawsuit is timely. I therefore recommend that Defendant's motion to dismiss based on the statute of limitations be granted, and Plaintiffs be given one opportunity to re-plead their claims in a manner that shows Plaintiffs have standing and their claims are not time barred.

### C. Failure to State a Claim

Defendant argues that Plaintiffs' allegations are insufficient to sustain a claim for disparate treatment or adverse impact under the FHA. Having found that the Complaint should be dismissed as time-barred and that the Court lacks subject matter jurisdiction, I do not reach the parties arguments as to failure to state a claim under Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("Ordinarily, . . . the court should dismiss only on the jurisdictional ground under Fed.R.Civ.P. 12(b)(1), without reaching the question of failure to state a claim under Fed.R.Civ.P. 12(b)(6).").[8]

---

[8] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued on or before September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

## CONCLUSION

Plaintiffs' allegations are presently insufficient to demonstrate that they have standing and that their claims are not time-barred. Therefore, I respectfully **RECOMMEND** that Defendant's Motion to Dismiss (DE 3) be **GRANTED**, that the Complaint be **DISMISSED WITHOUT PREJUDICE**, and that Plaintiffs be granted one opportunity to amend the Complaint to address the pleading defects discussed herein.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Rodolfo A. Ruiz, II. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 1st day of July, 2022.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE